UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEATHER M. LINDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 3:16-CV-05308-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in evaluating the medical opinion evidence, Plaintiff's subjective symptom testimony, or the lay witness opinion evidence. Further, the additional evidence Plaintiff submitted to this Court, but which was not considered by the Appeals Council, does not render the ALJ's decision

unsupported by substantial evidence. Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL & FACTUAL HISTORY**

On August 1, 2012, Plaintiff filed applications for DIB and SSI. *See* Dkt. 9, Administrative Record ("AR") 215-24. Plaintiff alleges she became disabled on April 1, 2009, due to depression, anxiety, back pain, fibromyalgia, migraines, PTSD, and irritable bowel syndrome. *See* AR 56-69 215, 244. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 83-84, 104-05. A hearing was held before an ALJ on April 18, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 38.

On May 9, 2014, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 29. Plaintiff's request for review of the ALJ's decision, including the consideration of new medical evidence supporting a fibromyalgia diagnosis, was denied by the Appeals Council on February 19, 2016, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On April 25, 2016, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for an award of benefits, or in the alternative, for further proceedings, because the ALJ: 1) failed to properly evaluate the medical opinions from four examining psychologists, three non-examining psychologists, one non-examining physician, and one treating ARNP; 2) failed to properly evaluate the testimony of one lay witness; 3) failed to properly evaluate Plaintiff's testimony; and 4) erred in assessing Plaintiff's residual functional capacity ("RFC") Dkt. 13, p 2.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

# DISCUSSION

I.  Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

**A. Standard**

The ALJ has the responsibility to determine credibility and resolve ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining

physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

### B. Application of Standard

The ALJ found Plaintiff had the RFC to perform light work, subject to additional physical and mental limitations. AR 19. Specifically, the ALJ found Plaintiff could only:

> occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. Further she should avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights. She needs close access to a bathroom. She can perform unskilled work with simple repetitive tasks, rare changes in the work setting; rare judgment or decision-making; no interaction with the general public as part of job duties; and only occasional superficial interaction with co-workers, dealing with things rather than people.

AR 19-20. Plaintiff argues this RFC finding was incomplete, as the ALJ failed to properly evaluate the medical opinions of four examining psychologists, three non-examining psychologists, one non-examining physician, and one examining ARNP. Dkt. 13.

1.   *Daniel Neims, Psy.D.*

Dr. Neims performed a medical evidence review on behalf of the Washington State Department of Social and Health Services ("DSHS") on February 21, 2012. AR 541. As part of his review, Dr. Neims considered the opinions of Michael Brown, Ph.D., Kimberly Wheeler, Ph.D., and Tasmyn Bowes, Psy.D., as well as medical records from Willapa Behavioral Health up to January 10, 2012. AR 541. Based on his review of this medical evidence, Dr. Neims opined Plaintiff would have marked or severe limitations in her ability to: adapt to changes in a routine work setting; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 542. Dr. Neims also opined Plaintiff would have moderate limitations in her ability to: understand, remember, and persist in complex tasks; learn new tasks; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting with public contact; and communicate and perform effectively in a work setting with limited public contact. AR 542. For all other mental limitations listed on the DSHS form, Dr. Neims assessed no significant limitation, or found the medical evidence did not address those limitations. AR 542.

The ALJ gave Dr. Neims' opinion little weight for two reasons:

> [1] It is inconsistent with the overall moderate limitations identified by Dr. Wheeler, Dr. Brown, and Dr. Bowes. [2] Further, shortly after his assessment, the record shows that the claimant had not followed up with her medication provider as she was expected to do. Once she did in fact follow up adjustments to her medications were made. These were helpful in managing her symptoms. [AR 430-32, 522-36].

AR 27.  Plaintiff argues these were not specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Neims' opinion. The Court disagrees.

Addressing the ALJ's second reason for discounting Dr. Neims' opinion first, a treatment's effectiveness is relevant in determining the severity of a claimant's symptoms. *See Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Further, subsequent improvements in a claimant's condition can undermine a prior medical conclusion. *See Pruitt v. Comm'r of Soc. Sec.*, 612 Fed.Appx. 891, 893 (9th Cir. 2015) (treatment notes indicating claimant's stress-related symptoms improved with treatment supported ALJ's conclusion claimant could perform sedentary work). *Cf. De Herrera v. Astrue*, 372 Fed.Appx. 771, 772 (9th Cir. 2010) (ALJ properly found nurse practitioner's opinion was undermined by the fact claimant's condition improved with treatment). Here, the ALJ properly cited treatment notes reflecting that, after Dr. Neims' rendered his opinion, changes to Plaintiff's medication regimen improved her mood and functioning. AR 430-32, 528. This was a specific and legitimate reason to discount Dr. Neims' opinion.

Plaintiff also argues the ALJ's first reason for discounting Neims' opinion—it was inconsistent with the overall moderate limitations identified by Dr. Wheeler, Dr. Brown, and Dr. Bowes—was unsupported by substantial evidence. Dkt. 13, p. 6. The ALJ's reasoning here is conclusory, without any citation to the record. AR 27. It is also not obvious from the face of Dr. Wheeler, Dr. Brown, and Dr. Bowes' opinions exactly *how* Dr. Neims' opinion is purportedly inconsistent. All four psychologists opine to essentially the same constellation of moderate and (in Dr. Brown and Dr. Neims' case) marked limitations. *Compare* AR 542 *with* AR 338-39, 385, *and* 402-03. The ALJ's failure to explain her reasoning was error. However, because the ALJ's other reason for discounting Dr. Neims' opinion was a specific and legitimate reason supported by substantial evidence, any error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

2. *Michael L. Brown, Ph.D.*

Dr. Brown examined Plaintiff on July 14, 2011. AR 336. Dr. Brown documented Plaintiff's reports of her social history and performed a mental status examination. AR 337-344.[1] Dr. Brown diagnosed Plaintiff with: Major Depression, recurrent, severe without psychotic features; PTSD; Panic Disorder, NOS; and Polysubstance Abuse, long term remission. AR 338. As a result of these impairments, Dr. Brown opined Plaintiff would have marked limitations in her ability to communicate and perform effectively in a work setting with public contact, and in her ability to maintain appropriate behavior in a work setting. AR 339. Dr. Brown also opined Plaintiff would have moderate limitations in her ability to: learn new tasks; perform routine tasks without undue supervision; and communicate and perform effectively in a work setting with *limited* public contact. AR 339.

The ALJ gave little weight to Dr. Brown's opinion for the following three reasons:

> [1] Dr. Brown appears to have based these limitations on the claimant's report that she is anxious in public settings. [2] The opinion is inconsistent with the treating record including the fact that the claimant just started therapy and had only resumed her anti-depressant medication less than three weeks prior to his evaluation. The record shows improvement in the claimant's symptoms when she consistently takes prescribed medication and follows up with her providers. [3] It is also inconsistent with the claimant's activities, which include socializing with friends, boyfriends, and family as well [as] providing some care for her son. [AR 338].

AR 26-27. Plaintiff argues the ALJ improperly discounted Dr. Brown's opinions by improperly finding Dr. Brown's opinion was based on Plaintiff's self reports. However, Plaintiff does not discuss the ALJ's second and third reason for discounting Dr. Brown's opinion. Plaintiff has the

---

[1] Much of Dr. Brown's mental status examination report is handwritten and illegible, however, what the Court has been able to decipher reflects a largely normal mental status examination. AR 341-44. For example, Plaintiff demonstrated an adequate fund of knowledge, was able to interpret proverbs, could spell "world" forwards and backwards, and was able to perform calculations. AR 344.

burden of demonstrating harmful error, and any arguments not raised in her opening brief are waived. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). *See also Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), *Bisuano v. Colvin*, 584 Fed.Appx. 512, 514 (9th Cir. 2014).  Indeed as to the second reason, as discussed above, the ALJ could properly rely on evidence indicating Plaintiff's mental symptoms improved when she resumed her medication.  *See Tommasetti*, 533 F.3d at 1039-40; *Morgan*, 169 F.3d at 599-600; *Pruitt,* 612 Fed.Appx. at 893; *De Herrera*, 372 Fed.Appx. at 772. *See* AR 430-32, 528. Thus, even if Plaintiff is correct that the ALJ's first reason for discounting Dr. Brown's opinion was erroneous, Plaintiff has not demonstrated any such error was harmful.

### 3. *Errors in Giving Significant Weight to Medical Opinions*

Plaintiff also argues the ALJ erred by improperly giving several other medical opinions significant weight. Plaintiff's arguments to this effect fall into two categories. First, Plaintiff argues the ALJ erred by giving significant weight to some medical opinions without incorporating all of their opined limitations. Second, Plaintiff argues evidence post-dating the medical opinions at issue suggest Plaintiff's condition has worsened over time. For the reasons discussed below, Plaintiff has failed to raise a colorable claim of error concerning these medical opinions.

#### a.  Failure to Discuss All Limitations

Plaintiff argues the ALJ erred by purporting to give significant weight to three examining psychologists, but nonetheless failing to include all of the limitations opined to by these medical experts in the RFC finding. Dkt. 13, pp. 3-5. Specifically, Plaintiff argues the ALJ failed to include in the RRC limitations opined to by Dr. Keith Krueger, Ph.D., Kimberly Wheeler, Ph.D., and Tasmyn Bowes, Psy.D. AR 326, 385-86, 402-03. However, Plaintiff does not articulate what limitations the ALJ actually failed to account for in the RFC finding. Plaintiff also argues the ALJ

erred by purporting to give significant weight to the opinions of state agency medical consultants Dan Donahue, Ph.D., and Diane Fligstein, Ph.D., who opined to no more than moderate limitations across the same factors identified by Dr. Krueger, Dr. Wheeler, and Dr. Bowes.

The ALJ restricted Plaintiff to: "unskilled work with simple repetitive tasks, rare changes in the work setting; rare judgment or decision-making; no interaction with the general public as part of job duties; and only occasional superficial interaction with co-workers, dealing with things rather than people." AR 19-20. Both Dr. Krueger and Dr. Bowes opined to no more than moderate functional limitations in areas which are accounted for by this RFC finding. AR 326, 402-03. As for Dr. Wheeler, she opined to mostly moderate limitations, but indicated Plaintiff would have marked limitations in communicating and performing effectively in a work setting with public contact, and maintaining appropriate behavior in a work setting. AR 339. However, as the ALJ's RFC finding entirely precludes interaction with the general public as part of job duties, as well as significantly reduces Plaintiff's exercise of judgment, decision-making, changes to the work setting, and interaction with coworkers, the ALJ's RFC finding adequately accounts for Dr. Wheeler's opined limitations. When an ALJ accounts for all of a physician or psychologists' opined limitations in the RFC finding, there is no harmful error for the Court to review. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). *See also Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (noting the ALJ did not need to offer clear and convincing reasons to reject a physician's opinion, where the ALJ accepted all of the physician's findings). Finally, Plaintiff alleges the ALJ erred by failing to also include Dr. Donahue and Dr. Fligstein's narrative descriptions *about* their opined limitations into the RFC finding. Dkt. 13, pp. 6-7. But, both Dr. Donahue and Dr. Fligstein opined to the same essential functional limitations as the examining psychologists. *Compare* 91-92 *and* 131-32 (opining to moderate limitations in concentration,

persistence, and pace, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting), *with* AR 326, 385-86, 402-03. To the extent both doctors offered an interpretive gloss on their opined limitations, those were not themselves concrete limitations the ALJ was required to incorporate into the RFC. *Cf. Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.").

b.  More Recent Evidence.

Plaintiff argues the ALJ erred by giving significant weight to the opinions of one state agency medical consultant, one examining ARNP, and one examining psychologist, despite the fact more recent evidence shows Plaintiff's impairments have worsened over time. However, an ALJ is only required to offer specific and legitimate reasons for *discounting* a medical opinion. *See Lester*, 81 F.3d at 831. Moreover, the ALJ has sole responsibility to resolve ambiguities and determine the credibility of medical evidence. *See Reddick*, 157 F.3d at 722. *See also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (drawing a distinction between an ALJ *discounting* a medical opinion, and an ALJ *interpreting* a medical opinion). Provided an ALJ's reasoning is supported by substantial evidence, the Court is not permitted to reweigh the evidence.

An examining physician's opinion constitutes substantial evidence "because it rests on his [or her] own independent examination . . . ." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, a non-examining medical consultant's opinion constitutes substantial evidence where it is consistent with other evidence in the record. *Id.* at 1149. Here, the ALJ gave significant weight to the opinions of Florence Fadele, ARNP, and Norman Staley, M.D., that Plaintiff was capable of performing light work. The ALJ noted these opinions were consistent with objective medical evidence in the record—such as normal x-rays, limited treatment, and examination

results—as well as Plaintiff's reports of normal activity and energy level. AR 294, 508, 518, 609. Similarly, the ALJ noted Dr. Krueger's opinion was consistent with the fact Plaintiff was not taking medication or in counseling for her mental health symptoms. AR 26. This was sufficient to support the ALJ's interpretation of Ms. Fadele, Dr. Staley, and Dr. Krueger's opinions, and the ALJ did not err by giving these medical experts significant weight.

Plaintiff argues, in conclusory fashion, that other evidence post-dating these opinions demonstrates Plaintiff's limitations were more severe. However, Plaintiff does not actually cite to any evidence to support this proposition. *See* Dkt. 13, pp. 3-7. To the extent Plaintiff recites select passages from the medical evidence *seriatim* in another section of her briefing (*See* Dkt. 13, pp. 7-10), such evidence, at most, only supports an alternative interpretation of the record. When the evidence admits of more than one rational interpretation, sole authority for interpreting the evidence rests with the ALJ. *See Morgan*, 169 F.3d at 603.

## II. Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair,* 885 F.2d at 604. *See also*

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

Plaintiff argues the ALJ failed to offer specific, clear, and convincing reasons for discounting Plaintiff's testimony concerning the severity of her physical and mental health symptoms and their associated limitations. The Court disagrees.

First, the ALJ notes the objective medical evidence in the record was inconsistent with Plaintiff's testimony concerning the severity of her limitations. AR 21. This was proper. *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (*citing* 20 C.F.R. § 404.1529(c)(2)). Further, an ALJ's reliance on medical evidence indicating a claimant is exaggerating his or her symptoms is itself a clear and convincing reason for discounting a claimant's subjective symptom testimony. *See Hamilton v. Comm'r, Soc. Sec. Admin.*, 368 Fed.Appx. 724, 726 (9th Cir. 2010) (citing *Tonapetyan*, 242 F.3d at 1148). Here, the ALJ noted both Dr. Wheeler and Dr. Bowes documented evidence of symptom over-exaggeration during Plaintiff's clinical interview and mental status examinations. AR 387, 404. The ALJ also noted that, despite complaints of back pain, Plaintiff's x-rays were negative, straight leg raise tests

were negative, and Plaintiff demonstrated normal sensation and gait. AR 506-08, 513. These were specific, clear, and convincing reasons for discounting Plaintiff's testimony.

Second, the ALJ noted Plaintiff had failed "to consistently take medication that is helpful in managing [her] symptoms." AR 24. When evaluating a claimant's testimony concerning the severity of their symptoms, the ALJ may properly consider "unexplained or inadequately explained failure[s] to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. *See also Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Here, the ALJ documents several instances where Plaintiff failed to follow treatment recommendations, including her decision to taper off medications without medical consultation in order to try a different medication, her reports that medications were effective despite records indicating she has been out of medications for months, and her failure to attend follow up appointments with her primary care provider or the clinician who regulated her prescriptions. AR 432, 529, 629. Plaintiff argues the ALJ nonetheless erred by failing to follow the requirements of SSR 96-7p.[2] Specifically, Plaintiff argues the ALJ could not discount her subjective symptom testimony due to a failure to follow prescribed treatment unless the ALJ first considers whether and to what extent Plaintiff had an explanation for her failure to consistently take her medication. However, SSR 96-7p indicates:

---

[2] Plaintiff argues the ALJ was required to follow the requirements of SSR 16-3p rather than SSR 96-7p. However, SSR 16-3p's effective date was approximately two years after the date of the ALJ's decision. *See* SSR 16-3p, *available at* 2016 WL 1119029. The changes to Social Security Administration practice articulated in SSR 16-3p could not apply to the ALJ decision at issue before this court. 42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *See Bowen v. Georgetown Univ. Hosp*, 488 U.S. 204, 214-215 & n.3 (1988); *Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015). *See also Portlock v. Barnhart*, 208 F.Supp.2d 451, 456 (D. Del. June 24, 2002) (holding the application of a recently-revised SSR to an applicant's pending claim on appeal would constitute an impermissible retroactive application of an agency rule) (*citing Bowen*, 488 U.S. at 224).

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations *that the individual may provide, or other information in the case record,* that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, *available at* 1996 WL 374186 (emphasis added). Here, Plaintiff has not pointed to any explanation offered in testimony or in the medical record as to Plaintiff's failures to consistently take medication or pursue treatment. In fact, in reviewing the medical evidence, the ALJ noted Plaintiff reported to her providers she was experiencing no or minimal side effects from her medications, despite reporting significant benefit. *See* AR 339, 432, 526-31. To the extent these medications were ineffective or did produce side effects, these medical records also indicate Plaintiff's medications or doses were changed to effectively accommodate these issues. *See* AR 339, 432, 526-31. The ALJ did not err by relying on Plaintiff's failure to follow treatment recommendations in order to discount her testimony.

Third, the ALJ noted Plaintiff's symptoms were exacerbated primarily due to external stressors such as "family stress and her romantic relationships," rather than her medically determinable impairments. AR 24. This is a clear and convincing reason for discounting a claimant's subjective symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (noting the fact a claimant stopped working due to being laid off, rather than due to his injuries, was a clear and convincing reason for discounting the claimant's testimony); *Wright v. Colvin*, 2014 WL 3729142, at *5-6 (E.D. Wash. July 25, 2014) (noting the ALJ properly discounted a claimant's testimony concerning her mental impairments when the record revealed her symptoms were the result of "situational stressors and not related to her [mental] impairments"). Further, the ALJ supports this finding with substantial evidence in the record. The ALJ cited to records indicating Plaintiff's symptoms were exacerbated by difficulties in her

relationship with her boyfriend and her immediate family. AR 347, 358, 365. The ALJ could properly rely on this evidence to discount the severity of Plaintiff's limitations, and the ALJ did not err by doing so here.

Finally, the ALJ states Plaintiff's activities of daily living contradict her allegations. AR 25. However, the ALJ simply lists various activities of daily living without explaining how and to what extent these activities contradict Plaintiff's testimony, or whether these activities are transferable to a work setting. AR 25. The ALJ's failure to explain how these activities actually contradict Plaintiff's testimony was error. However, because the ALJ had other specific, clear, and convincing reasons for discounting Plaintiff's testimony, any error is harmless, as it is "inconsequential to the ultimate nondisability determination. *Molina*, 674 F.3d at 1117.

### III. Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence in the Record.

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010).

Here, the ALJ considered the third party statement of Plaintiff's mother, Debbie Snyder. AR 251-58. Ms. Snyder reported Plaintiff experienced concentration issues which resulted in her not completing tasks she started. AR 256. Ms. Snyder also reported Plaintiff had been socially withdrawn, and engaged primarily in tasks involving interaction with things (reading, coloring, puzzles, computer games, watching TV), rather than friends and family. AR 255-56. The ALJ gave Ms. Snyder's testimony some weight, as it was consistent with Plaintiff's treatment record. AR 27.

The ALJ also noted the RFC finding accommodated the symptoms and limitations Ms. Snyder described in her report. AR 27.

Plaintiff argues, in a conclusory fashion, that the RFC finding does not account for all of the limitations testified to by Ms. Snyder. However, Plaintiff fails to articulate how Ms. Snyder's testimony concerning Plaintiff's difficulties in concentration and social interaction are actually inconsistent with the ALJ's restriction to: "unskilled work with simple repetitive tasks, rare changes in the work setting; rare judgment or decision-making; no interaction with the general public as part of job duties; and only occasional superficial interaction with co-workers, dealing with things rather than people." AR 19-20. Further, as Plaintiff concedes, Ms. Snyder's description of Plaintiff's symptoms appears to be consistent with the moderate limitations opined to by Dr. Neims, Dr. Wheeler, Dr. Krueger, and Dr. Bowes, AR 326, 339, 385-86, 402-03. *See* Dkt. 15, p. 10. As discussed above in Section I, the ALJ properly evaluated the medical opinion evidence and articulated a RFC finding consistent with the medical opinions. Because the RFC finding accounts for Ms. Snyder's testimony, there is no error for the Court to review.

    IV.    <u>Whether the New Evidence Submitted to the Appeals Council but Not Included in the Administrative Record Supports Reversal of the ALJ's Decision</u>

Plaintiff argues the Court should review additional medical evidence submitted to, but not considered by, the Appeals Council. Dkt. 13, pp. 9-10. The additional evidence consists of a physical evaluation performed by rheumatologist Yun Choe, M.D., on June 4, 2014. Dkt. 13, Exh. 1. The Appeals Council reviewed the new submission, but elected not to consider the evidence or include it in the Administrative Record:

> We also looked at medical records from . . . Olympia Arthritis Medical Center from May 14, 2014 to June 4, 2014 (8 pages). The Administrative Law Judge decided your case through May 9, 2014. This new information is about a later time. Therefore it does not affect the decision about whether you were disabled beginning on or before May 9, 2014.

AR 2. Plaintiff, citing *Brewes v. Comm'r of SSA*, 682 F.3d 1157 (9th Cir. 2012), argues that the ALJ's failure to consider this evidence renders his determination Plaintiff did not have the severe impairment of fibromyalgia, as well as the ALJ's evaluation of Plaintiff's testimony, unsupported by substantial evidence.

"The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes*, 682 F.3d at 1162 (*citing* 20 C.F.R. § 404.970(b). When the Appeals Council considers the evidence in denying review of the ALJ's decision, "the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Id*. at 1159-60 (emphasis added). Here, the Appeals Council evaluated the new medical evidence, determined the evidence was not relevant to Plaintiff's application for disability benefits as it did not relate to the period at issue, and thus did not "consider" the evidence in evaluating the ALJ's decision or include the evidence in the Administrative Record. This is distinct from a situation where the Appeals Council considers the newly submitted evidence, yet finds the evidence does not provide a basis for changing the ALJ's decision. *See id.* at 1162-63. Under these circumstances, the Court would have authority to consider the evidence submitted to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993).

Here, however, the Appeals Council did not "consider" this evidence. "Consider" is a term of art in this context. For example, in the Notice of Appeals Council Action, the Council explicitly

1  "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence listed
2  on the enclosed Order of Appeals Council" AR 2. On the list of additional enclosed evidence,
3  several new records were identified and incorporated into the administrative record. AR 5. In
4  contrast, the Council "looked at" the June 4, 2014 medical evidence from Dr. Choe and found it
5  concerned a later period in time than Plaintiff's disability application. AR 2. The Appeals Council
6  conducted a threshold evaluation to determine whether the evidence was relevant, but did not
7  "consider" the additional medical evidence on the merits.

8        The case *Knipe v. Colvin*, 2015 WL 9480026, *5-6 (D. Or. 2015), presented an identical
9  situation. In *Knipe*, Plaintiff submitted a post-hearing psychologist's report and opinion to the
10 Appeals Council. *Id.* at *5. As in this case, the Appeals Council "looked at" the psychological
11 evaluation and declined to include it in the record, as it was "about a later date" than the ALJ's
12 decision. *Id.* at *5. As Plaintiff does here, Knipe cited *Brewes* to the District Court for the
13 proposition that the Appeals Council "considered" the evidence because it "looked at" the
14 evidence.

15       The undersigned agrees with the *Knipe* court's resolution of this issue: *Brewes* is
16 distinguishable, as the Appeals Council in *Brewes* "considered the additional evidence" and
17 explicitly made it part of the record. *Brewes*, 682 F.3d at 1161. In this case, by contrast, the
18 Appeals Council "looked at" Dr. Choe's opinion but determined the evidence did not relate to the
19 period under review. Thus, the Appeals Council did not "consider" Dr. Choe's opinion, and the
20 evaluation "did not become part of the record that the Court must, as a matter of law, consider

when determining if substantial evidence supports the denial of benefits." *Knipe*, 2015 WL 9480026, at *5. [3]

The only way this Court may consider the evidence submitted to, but not considered by, the Appeals Council is through "Sentence Six" of 42 U.S.C. § 405(g). Under Sentence Six, a court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *See Melkonyan v. Sullivan*, 111 S.Ct. 2157, 2164, 501 U.S. 89 (1991). District Courts within the Ninth Circuit use Sentence Six "as the proper vehicle for addressing an Appeals Council's improper belief that a medical opinion concerned a time before the ALJ's decision." *Knipe*, 2015 WL 9480026, at *6, n. 7. *See also Winland v. Colvin*, 2014 WL 4187212, at *4 (W.D. Wash. 2014).

However, Plaintiff did not raise a Sentence Six argument in her opening or reply brief, nor did Plaintiff request relief under Sentence Six. Further, in determining whether Sentence Six remand is appropriate "the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

Plaintiff has failed to demonstrate how Dr. Choe's report is "material" for purposes of either *Brewes* or Sentence Six. Though the ALJ did not find Plaintiff's fibromyalgia to be a severe impairment because the medical records did not satisfy the requirements of SSR 12-2p (*available at* 2012 WL 3104869), the ALJ nonetheless indicated she "considered all of the claimant's

---

[3] The Court also notes the Ninth Circuit has recently held that where "evidence submitted to the Appeals Council post-dated the ALJ's decision," the Appeals Council could properly exclude it from the Administrative Record. *Whitten v. Colvin*, 642 F. App'x 710, 713 (9th Cir. 2016)

symptoms and limitations regardless of whether they are the result of severe or non-severe impairments." AR 18. The ALJ also discussed Plaintiff's testimony concerning her fibromyalgia symptoms later in the written decision. AR 20. Plaintiff, however, has failed to show any new or additional limitations arising from Dr. Choe's report which were not already considered by the ALJ, nor has Plaintiff demonstrated how Dr. Choe's diagnosis of fibromyalgia undermines the ALJ's evaluation of Plaintiff's testimony. For example, Plaintiff has not articulated how Dr. Choe's opinion would call into question the ALJ's finding that Plaintiff failed to comply with her mental health treatment recommendations, or that several providers indicated Plaintiff was exaggerating her mental health symptoms.

Because Plaintiff did not request relief under Sentence Six, or otherwise satisfy the requirements for relief under Sentence Six, the Court cannot consider Dr. Choe's report in evaluating whether the ALJ's decision was supported by substantial evidence.

## CONCLUSION

Based on the above stated reasons and the relevant record, the undersigned finds the ALJ properly concluded Plaintiff was not disabled. Therefore, the Court orders this matter be affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Judgment should be for Defendant and the case should be closed.

Dated this 20th day of January, 2017.

David W. Christel
United States Magistrate Judge